IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Keefe, Bruyette & Woods, Inc.,    :
             :
    Plaintiff,     :
             :
  v.         :
             :  Case No. 08-CV-1163
             :  (LAP)
Philadelphia Stock Exchange, Inc.,  :
             :
             :
    Defendant.   :

## **ANSWER**

    Defendant Philadelphia Stock Exchange, Inc. ("PHLX"), by and through its counsel, Ballard Spahr Andrews & Ingersoll, LLP, hereby answers Keefe, Bruyette & Woods, Inc.'s ("KBW") Complaint as follows.

    Allegations in this answer concerning PHLX's actions are based upon personal knowledge, unless otherwise stated; all other allegations are based on information and belief.

    1.   The allegations contained in Paragraph 1 of the Complaint purport to state the nature of this action instituted by KBW and therefore do not require a response. To the extent a response is necessary, PHLX specifically denies that KBW is entitled to a declaratory judgment and/or money damages against PHLX. PHLX further specifically denies that it has breached and/or anticipatorily breached the relevant contract between itself and KBW.

    2.   The allegations contained in Paragraph 2 of the Complaint are admitted, except PHLX specifically denies that it was at all times before January 20, 2004 a member owned, not-for-profit mutual corporation. Also, the terms "not-for-profit" and "for-profit" are conclusions of law to which no response is required. For purposes of this Answer, PHLX

defines "Demutualization" to be its conversion on January 20, 2004 from a membership corporation to a stock corporation

3.      In response to the allegations contained in Paragraph 3 of the Complaint, PHLX admits that KBW provided financial advisory and investment banking services to PHLX in connection with the Demutualization.  The remainder of the allegations in Paragraph 3 of the Complaint, in so far as they seek to characterize the written agreement between the parties (the "Engagement Agreement"), are denied. The Engagement Agreement speaks for itself.

4.      In response to the allegations contained in Paragraph 4 of the Complaint, PHLX admits that KBW has sought indemnification and reimbursement in connection with McGowan Investors LP, et al. v. Keefe Bruyette & Woods, Inc., et al., No. 07-2464 (E.D. Pa.) (Brody, J.) (the "Second McGowan Action").  PHLX specifically denies that KBW sought, prior to filing the Complaint, indemnification and reimbursement in connection with McGowan Investors LP, et al. v. Frucher, et al., No. 06-2558 (E.D. Pa.) (Brody, J.) (the "First McGowan Action"), and further denies that the filing of the Complaint constitutes a request for reimbursement.  PHLX admits that the First and Second McGowan Actions arise from the Demutualization and the financial advisory and investment banking services KBW provided to PHLX pursuant to the Engagement Agreement.  PHLX denies any other allegations contained in Paragraph 4 of the Complaint.

5.      In response to the allegations contained in Paragraph 5 of the Complaint, PHLX denies that it has refused and continues to refuse to indemnify and reimburse KBW in connection with the First McGowan Action.  PHLX further denies that it is obligated to indemnify and reimburse KBW for the First McGowan Action; KBW failed to provide prompt notice to PHLX of its intent to seek indemnification, a prerequisite to indemnification required

under the Engagement Agreement. PHLX admits that it has denied KBW's request for indemnification and reimbursement of its unreasonable fees in the Second McGowan Action. PHLX specifically denies that it is obligated to indemnify and reimburse KBW for the Second McGowan Action; KBW has refused to permit PHLX to assume, or otherwise participate in, the defense of the Second McGowan Action, and KBW has failed to cooperate with PHLX as to KBW's defense, prerequisites to indemnification required under the Engagement Agreement. PHLX denies any other allegations contained in Paragraph 5 of the Complaint.

6.      PHLX admits that this Court has subject-matter jurisdiction.

7.      In response to the allegations contained in Paragraph 7 of the Complaint, PHLX denies that venue is proper in this district. A substantial part of the events or omissions alleged in the Complaint did not occur within this district. Rather, venue is proper in the Eastern District of Pennsylvania, which is where virtually all of the events allegedly giving rise to KBW's Complaint occurred. Moreover, the legal actions for which KBW seeks indemnification were brought in the Eastern District of Pennsylvania and are actions to which this case should be treated as related. PHLX has requested permission to transfer venue to the Eastern District of Pennsylvania.

8.      After reasonable investigation, PHLX lacks sufficient information or belief to respond to the allegations contained in Paragraph 8 of the Complaint and therefore denies same.

9.      In response to the allegations contained in Paragraph 9 of the Complaint, PHLX admits that it is a corporation formed pursuant to the laws of Delaware. PHLX further admits that its primary place of business is at 1900 Market Street, Philadelphia, Pennsylvania 19103-3584.

10.    In response to the allegations contained in Paragraph 10 of the Complaint, PHLX admits that KBW was engaged to provide financial advisory and investment banking services in connection with the Demutualization.  PHLX further admits that the terms of this engagement are set forth in the Engagement Agreement, although extrinsic evidence may be necessary to understand those terms.

11.    In response to the allegations contained in Paragraph 11 of the Complaint, PHLX denies that KBW complied with all of its obligations pursuant to the Engagement Agreement.  PHLX admits that KBW performed all of the financial advisory and investment banking services contracted for by PHLX in connection with the Demutualization.  PHLX denies any other allegations contained in Paragraph 11 of the Complaint.

12.    In response to the allegations contained in Paragraph 11 of the Complaint, PHLX admits that it accepted KBW's financial advisory and investment banking services performed in connection with the Demutualization.

13.    The allegations in Paragraph 13 of the Complaint purport to recite terms of the Engagement Agreement and therefore no response is required.  To the extent a response is warranted, the allegations are denied; the Engagement Agreement speaks for itself and what constitutes its "relevant terms" is a conclusion of law.

14.    The allegations contained in Paragraph 14 of the Complaint are admitted.

15.    The allegations contained in Paragraph 15 of the Complaint are admitted.

16.    After reasonable investigation, PHLX lacks sufficient information or belief to respond to the allegations contained in Paragraph 16 of the Complaint and therefore denies same.

17.    The allegations contained in Paragraph 17 of the Complaint are admitted.

18.     The allegations contained in Paragraph 18 of the Complaint are admitted.

19.     In response to the allegation in Paragraph 19 of the Complaint, after reasonable investigation, PHLX lacks sufficient information or belief to respond as to the amount of and characterization of fees and costs billed by Eiseman Levine Lehrhaupt & Kakoyiannis, P.C. ("ELLK") to KBW, or the authenticity of Exhibit B of the Complaint, and therefore denies same.

20.     In response to the allegation in Paragraph 20 of the Complaint that KBW has paid ELLK in full for legal fees and expenses incurred in connection with the First McGowan Action, after reasonable investigation, PHLX lacks sufficient information or belief to respond and therefore denies same.  In response to the allegation in Paragraph 20 of the Complaint that KBW's need for indemnification is ongoing, PHLX denies that KBW is entitled to indemnification for the First McGowan Action.  PHLX denies any other allegations contained in Paragraph 20 of the Complaint, except that PHLX admits there is an appeal pending in the First McGowan Action.

21.     The allegations contained in Paragraph 21 of the Complaint are admitted.

22.     In response to the allegations contained in Paragraph 22 of the Complaint, PHLX admits that the complaint in the Second McGowan Action was filed in the United States District Court for the Eastern District of Pennsylvania on or about June 18, 2007.  In response to the allegation that the McGowan Plaintiffs sent a courtesy copy of the Complaint to KBW, after reasonable investigation, PHLX lacks sufficient information or belief to respond and therefore denies same.  PHLX denies any other allegations contained in Paragraph 22 of the Complaint.

23.     After reasonable investigation, PHLX lacks sufficient information or belief to respond to the allegations contained in Paragraph 23 of the Complaint and therefore denies same.

24.     In response to the allegations contained in Paragraph 22 of the Complaint, PHLX admits that the Engagement Agreement grants PHLX the right to assume the defense of KBW subject to certain limitations.  In so far as the allegations in Paragraph 24 of the Complaint purport to recite terms of the Engagement Agreement, no response is required.  To the extent a response is warranted, the allegations are denied; the Engagement Agreement speaks for itself.  PHLX denies any other allegations contained in Paragraph 24 of the Complaint.

25.     In response to the allegations contained in Paragraph 25 of the Complaint, PHLX admits that, as was its contractual right, it sought to assume the defense of KBW in the Second McGowan Action and sent a letter to KBW to that effect, dated July 10, 1007.  In response to the allegation that KBW had already instructed ELLK to begin work on its motion to dismiss by that time, after reasonable investigation, PHLX lacks sufficient information or belief to respond and therefore denies same.

26.     In response to the allegations contained in Paragraph 26 of the Complaint, PHLX admits that ELLK sent a letter, dated July 10, 2007, to KBW purporting to describe an alleged conflict of interest in having counsel selected by PHLX assume the defense of KBW in the Second McGowan Action.  PHLX specifically denies that any such conflict of interest exists or could reasonably be asserted to exist.  In so far as the allegations contained in Paragraph 26 of the Complaint purport to recite the statements contained in a written document, no response is required.  To the extent a response is required, PHLX denies KBW's recitation; the letter speaks for itself.  Further, after reasonable investigation, PHLX lacks sufficient information or belief to

respond to the allegation that KBW may assert cross-claims against PHLX in the context of the Second McGowan Action, and therefore denies same. PHLX denies any other allegations contained in Paragraph 26 of the Complaint.

27.     In response to the allegations contained in Paragraph 27 of the Complaint, PHLX admits that KBW refused to permit PHLX to assume its and/or Spalluto's defense in the Second McGowan Action. In response to the allegations concerning KBW's direction to ELLK to stop work in connection with the Second McGowan Action, and ELLK's compliance therewith, after reasonable investigation, PHLX lacks sufficient information or belief to respond and therefore denies same. PHLX denies any other allegations contained in Paragraph 27 of the Complaint.

28.     After reasonable investigation, PHLX lacks sufficient information or belief to respond to the allegations contained in Paragraph 28 of the Complaint and therefore denies same.

29.     In response to the allegations contained in Paragraph 29 of the Complaint, PHLX admits that KBW sent written notice to PHLX of KBW's intent to seek indemnification in connection with the Second McGowan Action, although PHLX specifically denies that KBW "reiterate[d]" some earlier notice. PHLX further admits that it sought to assert its contractual right to assume the defense of KBW. PHLX further admits that KBW's rejection of PHLX's efforts led to an exchange of letters that failed to resolve the dispute. In so far as the allegations contained in Paragraph 29 of the Complaint purport to recite the statements contained in written documents, no response is required. To the extent a response is required, PHLX denies KBW's recitation; the letters speak for themselves. PHLX denies any other allegations contained in Paragraph 29 of the Complaint.

30.     In response to the allegations contained in Paragraph 30 of the Complaint, PHLX specifically denies that it was obligated to indemnify and reimburse KBW in connection with the Second McGowan Action.  In response to the allegations contained in Paragraph 30 of the Complaint, after reasonable investigation, PHLX lacks sufficient information or belief to respond concerning KBW's instructions to ELLK, and therefore denies same.  PHLX denies any other allegations contained in Paragraph 30 of the Complaint.

31.     In response to the allegations contained in Paragraph 31 of the Complaint, after reasonable investigation, PHLX lacks sufficient information or belief to respond because, consistent with KBW's improper refusal to cooperate with PHLX, KBW has stopped sending PHLX even filed papers in the matter, despite PHLX's requests to receive the same.  PHLX admits that the publicly available docket suggests that KBW's statements are correct.

32.     In response to the allegations contained in Paragraph 32 of the Complaint, after reasonable investigation, PHLX lacks sufficient information or belief to respond concerning the legal fees and expenses billed by ELLK, and therefore denies same.  In so far as KBW relies on the documents attached to its Complaint, those documents speak for themselves and do not require a response, other than PHLX lacks sufficient information or belief as to Exhibit F's authenticity and therefore denies same.  To the extent a response is required, PHLX specifically denies that the fees for legal services and expenses recited by KBW are reasonable.

33.     In response to the allegations contained in Paragraph 33 of the Complaint, after reasonable investigation, PHLX lacks sufficient information or belief to respond concerning the legal fees and expenses paid by KBW, and therefore denies same.

34.     In response to the allegations contained in Paragraph 34 of the Complaint, PHLX admits that the Second McGowan Action is ongoing.  After reasonable investigation,

PHLX lacks sufficient information or belief to respond concerning KBW's continued incurrence of legal fees and expenses in connection with the Second McGowan Action, and therefore denies same.

35.     In response to the allegations contained in Paragraph 35 of the Complaint, PHLX admits that, in an attempt to resolve this dispute without resorting to full-blown legal action, it filed a Praecipe To Issue Write of Summons Civil Action in the Philadelphia County Court of Common Pleas, Trial Division on November 13, 2007.  PHLX further admits that pursuant to its Praecipe, the Philadelphia County Court of Common Pleas issued a Writ Of Summons, Trial Division docket number 001293 (the "Writ").  PHLX further admits that, once again in an effort to resolve this dispute, it sent a courtesy copy of the writ to KBW with a cover letter indicating the nature of the dispute.  PHLX further admits that it delayed service of the Writ until January 30, 2008 because it continued to hope that the parties could resolve the dispute without the need for further legal action.  PHLX denies that it has not filed or served a complaint in connection with the Writ - a Complaint was filed on February 25, 2008.  A true and correct copy of the Complaint is attached hereto as Exhibit A.  PHLX denies any other allegations contained in Paragraph 35 of the Complaint.

36.     In response to the allegations contained in Paragraph 36 of the Complaint, PHLX admits that it initially commenced an action for a declaratory judgment against KBW, Inc. After recognizing that the wrong party was named, PHLX dismissed KBW, Inc. and properly joined Keefe, Bruyette & Woods, Inc.  After reasonable investigation, PHLX lacks sufficient information or belief to respond concerning the incorporation and legal relationship of KBW, Inc. and therefore denies same.  PHLX admits that KBW, Inc. is not a party to this action, is not a party to the KBW Engagement Agreement, and is not involved in the First or Second

McGowan Action. PHLX denies any other allegations contained in Paragraph 36 of the Complaint.

37.     In response to the allegations contained in Paragraph 37 of the Complaint, PHLX denies that it seeks an order stating that PHLX need not indemnify or reimburse KBW, Inc. in connection with the First McGowan Action or the Second McGowan Action; PHLX's complaint for declaratory judgment seeks an order stating that PHLX need not indemnify or reimburse Keefe, Bruyette & Woods, Inc., in connection with the First McGowan Action or the Second McGowan Action. PHLX denies any other allegations contained in Paragraph 37 of the Complaint.

38.     In response to the allegations contained in Paragraph 38 of the Complaint, PHLX denies that it has not brought an action against Keefe, Bruyette & Woods, Inc. Keefe, Bruyette & Woods, Inc. is the named defendant in PHLX's action for declaratory judgment, since removed to the Eastern District of Pennsylvania. PHLX further denies KBW's legalistic and hyper-technical allegation that this action is the first-filed action between the parties concerning the dispute between KBW and PHLX relating to the Engagement Agreement. PHLX denies any other allegations contained in Paragraph 38 of the Complaint.

39.     In response to the allegations contained in Paragraph 39 of the Complaint, PHLX denies that this action should continue in this forum. PHLX specifically denies that it engaged in forum shopping; rather, PHLX proceeded by Writ in an effort to resolve this matter amicably and it is KBW that has engaged in forum shopping. PHLX further denies that the balance of conveniences favors this forum; indeed, the Eastern District of Pennsylvania is: (a) the location of an earlier filed matter on the same subject; (b) the location of the two First and Second McGowan Actions, as well as other related actions; (c) the location of the PHLX

witnesses, while the KBW principal who executed and negotiated the Engagement Agreement, and led the Engagement, is located in Hartford, Connecticut; (d) the focal point of the Engagement and alleged wrongdoing to PHLX shareholders; (e) fully capable under New York federal court precedent of interpreting New York law; and (f) possessed of less congested dockets leading to more expeditious case resolutions.  PHLX further denies that KBW has suffered damages as a result of the matters alleged herein - KBW has proceeded in the First and Second McGowan Actions as it sees fit without complying with its contractual prerequisites for indemnification.  KBW, therefore, is responsible for the defense costs and other losses incurred as a result.  Indeed, PHLX denies that it has not been damaged as a result of the matters alleged herein - PHLX continues to incur increased legal fees, among other things, as a result of KBW's refusal to permit PHLX to assume, or otherwise participate in, the defense of the Second McGowan Action.  PHLX therefore denies that KBW is the "real plaintiff" in this dispute and further denies that KBW is entitled to its choice of forum.

40.    PHLX incorporates its responses to Paragraphs 1 through 39 above as though fully set forth in writing herein.

41.    In response to the allegations contained in Paragraph 41 of the Complaint, PHLX admits that the Engagement Agreement is a binding contract between KBW and PHLX.

42.    In response to the allegations contained in Paragraph 42 of the Complaint, PHLX denies that KBW complied with all of its obligations pursuant to the Engagement Agreement.

43.    In response to the allegations contained in Paragraph 43 of the Complaint, PHLX denies that it is obligated to indemnify and reimburse KBW pursuant to the Engagement

Agreement.  By way of further answer, PHLX responds that any refusal to indemnify KBW was warranted as a result of KBW's failure to comply with the terms of the Engagement Agreement.

44.     In response to the allegations contained in Paragraph 44 of the Complaint, PHLX denies that KBW is entitled to a judgment against the PHLX for money damages.

45.     PHLX incorporates its responses to Paragraphs 1 through 44 above as though fully set forth in writing herein.

46.     In response to the allegations contained in Paragraph 46 of the Complaint, PHLX admits that the Engagement Agreement is a binding contract between KBW and PHLX.

47.     In response to the allegations contained in Paragraph 47 of the Complaint, PHLX denies that KBW complied with all of its obligations pursuant to the Engagement Agreement.

48.     In response to the allegations contained in Paragraph 48 of the Complaint, PHLX denies that it is obligated to indemnify and reimburse KBW pursuant to the Engagement Agreement.  By way of further answer, PHLX responds that any refusal to indemnify KBW was warranted as a result of KBW's failure to comply with the terms of the Engagement Agreement.

49.     In response to the allegations contained in Paragraph 49 of the Complaint, PHLX denies that KBW is entitled to a judgment against the PHLX for money damages.

50.     PHLX incorporates its responses to Paragraphs 1 through 49 above as though fully set forth in writing herein.

51.     In response to the allegations contained in Paragraph 51 of the Complaint, PHLX admits that the Engagement Agreement is a binding contract between KBW and PHLX.

52.     In response to the allegations contained in Paragraph 52 of the Complaint, PHLX denies that KBW complied with all of its obligations pursuant to the Engagement Agreement.

53.     In response to the allegations contained in Paragraph 53 of the Complaint, PHLX denies that it is obligated to indemnify and reimburse KBW for the First McGowan Action pursuant to the Engagement Agreement.  By way of further answer, PHLX responds that any refusal to indemnify KBW was warranted as a result of KBW's failure to comply with the terms of the Engagement Agreement.

54.     In response to the allegations contained in Paragraph 54 of the Complaint, PHLX denies that KBW is entitled to a declaration concerning PHLX's indemnification obligations under the Engagement Agreement in connection with the First McGowan Action.

55.     PHLX incorporates its responses to Paragraphs 1 through 54 above as though fully set forth in writing herein.

56.     In response to the allegations contained in Paragraph 56 of the Complaint, PHLX admits that the Engagement Agreement is a binding contract between KBW and PHLX.

57.     In response to the allegations contained in Paragraph 57 of the Complaint, PHLX denies that KBW complied with all of its obligations pursuant to the Engagement Agreement.

58.     In response to the allegations contained in Paragraph 58 of the Complaint, PHLX denies that it is obligated to indemnify and reimburse KBW for the Second McGowan Action pursuant to the Engagement Agreement.  By way of further answer, PHLX responds that any refusal to indemnify KBW was warranted as a result of KBW's failure to comply with the terms of the Engagement Agreement.

59.    In response to the allegations contained in Paragraph 59 of the Complaint, PHLX denies that KBW is entitled to a declaration concerning PHLX's indemnification obligations under the Engagement Agreement in connection with the Second McGowan Action.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim against PHLX for which relief may be granted.

### SECOND DEFENSE

PHLX did not breach any agreement or contract.

### THIRD DEFENSE

KBW's claims are barred by estoppel.

### FOURTH DEFENSE

KBW's claims are barred by laches.

### FIFTH DEFENSE

KBW's claims are barred by waiver, ratification, and/or release.

### SIXTH DEFENSE

KBW's claims are barred by unclean hands.

### SEVENTH DEFENSE

Venue is improper in this Court.

### EIGHTH DEFENSE

KBW's damages, if any, should be reduced by the amount attributable to its failure to mitigate damages.

### NINTH DEFENSE

KBW is not entitled to reimbursement for its attorneys' fees.

PHLX intends to add and rely upon such other and further defenses as may become apparent during the discovery of this action and reserves the right to amend its Answer to assert such defenses.

WHEREFORE, for all of the foregoing reasons, PHLX respectfully requests that the Court enter the following relief:

(a)     The Complaint be dismissed with prejudice;

(b)     PHLX be awarded the costs of the suit, including reasonable attorneys' fees; and

(c)     PHLX be awarded such other and further relief as is just and proper.

Dated: March 24, 2008                    _/s/ Charles L. Rombeau_____
                                         Charles L. Rombeau (CR 2186)
                                         Stephen J. Kastenberg (admitted pro hac vice)
                                         Michael I. White (admitted pro hac vice)
                                         Jonathan T. Schmidt (admitted pro hac vice)
                                         BALLARD SPAHR ANDREWS & INGERSOLL, LLP
                                         1735 Market Street, 51st Floor
                                         Philadelphia, Pennsylvania  19103-7599
                                         215.665.8500
                                         Attorneys for Defendant

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY THAT, on this 24th day of March, 2008, a true and correct copy of the foregoing DEFENDANT'S ANSWER was served with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel for plaintiff:

Eric R. Levine
Eiseman, Levine, Lehrhaupt & Kakoyiannis, P.C.
805 Third Avenue
10th Floor
New York, NY 10022
(212) 752-1000
Fax: (212)-355-4608
Email: elevine@eisemanlevine.com
**Attorney for Plaintiff, Keefe, Bruyette & Woods, Inc.**

Jonathan Casillo Marquet
Eiseman, Levine, Lehrhaupt & Kakoyiannis, P.C.
805 Third Avenue
10th Floor
New York, NY 10022
(212)-752-1000
Fax: (212)-355-4608
Email: jmarquet@ellklaw.com
**Attorney for Plaintiff, Keefe, Bruyette & Woods, Inc.**

Dated:  March 24, 2008                     _/s/ Charles L. Rombeau_____

**Exhibit A to Defendant's Answer**

BALLARD SPAHR ANDREWS & INGERSOLL, LLP
Stephen J. Kastenberg, 70919
Michael I. White, 203674
Jonathan T. Schmidt, 203349
kastenbergs@ballardspahr.com
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103-7599
215.665.8500

Attorneys for Plaintiff
Philadelphia Stock Exchange, Inc.

Philadelphia Stock Exchange, Inc.,

Plaintiff,

v.

Keefe, Bruyette & Woods, Inc.

Defendant.

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
TRIAL DIVISION

NOVEMBER TERM, 2007

NO. 07-11-1293

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas ex-puestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET HELP. | LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL. |
| Philadelphia Bar Association<br>Lawyer Referral<br>and Information Service<br>One Reading Center<br>Philadelphia, PA  19107<br>(215) 238-6333<br>TTY (215) 451-6197 | Asociacion de Licenciados<br>deFiladelfia<br>Servicicio de Referencia e<br>Informacion Legal<br>One Reading Center<br>Filddelfia, Pennsylania  19107<br>(215) 238-6333<br>TTY (215) 451-6197 |

BALLARD SPAHR ANDREWS & INGERSOLL, LLP
Stephen J. Kastenberg, 70919
Michael I. White, 203674
Jonathan T. Schmidt, 203349
kastenbergs@ballardspahr.com
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103-7599
215.665.8500

Attorneys for Plaintiff
Philadelphia Stock Exchange, Inc.

| | |
|---|---|
| Philadelphia Stock Exchange, Inc., | COURT OF COMMON PLEAS PHILADELPHIA COUNTY TRIAL DIVISION |
| Plaintiff, | |
| v. | NOVEMBER TERM, 2007 |
| Keefe, Bruyette & Woods, Inc. | NO. 07-11-1293 |
| Defendant. | |

## COMPLAINT – CIVIL ACTION

Plaintiff Philadelphia Stock Exchange,  Inc. ("PHLX" or the "Exchange") by its
undersigned counsel, for its complaint against defendant Keefe, Bruyette & Woods, Inc.
("KBW"), avers as follows:

## I.    NATURE OF THE ACTION

1.    PHLX has certain indemnification obligations to KBW relating to its prior
retention of KBW.  This action arises from KBW's failure to comply with its obligations under
the indemnification agreement with PHLX, thereby rendering unavailable indemnification for
certain litigation defense costs that KBW claims are owed to it.

2.    PHLX and KBW are parties to an engagement agreement (the "Agreement")
concerning financial and advisory services KBW provided to PHLX in connection with the
demutualization of the Exchange, i.e. the conversion of the Exchange from a membership
corporation to a stock corporation ("the Engagement").  Pursuant to the Agreement, PHLX

undertook an obligation to indemnify and reimburse KBW for lawsuits arising from claims relating to the Engagement ("Covered Actions"). In exchange for indemnification, KBW granted PHLX the right to assume the defense of Covered Actions subject to certain conditions. When PHLX does not assume the defense of KBW, KBW's indemnification rights require that KBW permit PHLX to "participate" in the defense of KBW and that KBW cooperate with PHLX in the defense of Covered Actions.

3.    KBW denied PHLX's request to assume the defense of KBW in a Covered Action, McGowan Investors LP, et al. v. Keefe, Bruyette & Woods, Inc., et al., No. 07-2464 (E.D. Pa) (Brody, J.) (the "Second McGowan Action"). PHLX sought to assume the defense of KBW, but KBW refused without a legitimate basis under the Agreement for doing so. Since that time, KBW has refused to cooperate with PHLX in the defense of the Second McGowan Action or to allow PHLX to participate in the defense of the action. KBW has done so notwithstanding that PHLX has already defended not one, but three related lawsuits. Two of those lawsuits raised virtually the same claims by the same plaintiffs and counsel and have been dismissed based on insufficient pleadings. The third has led to a class settlement release that should release the claims in the Second McGowan Action. Yet, because it has refused to cooperate or allow PHLX to assume the defense, KBW has not been able to proceed efficiently, having already been billed by its New York counsel the unreasonable amount of more than $220,000 simply through the opening brief in support of its motion to dismiss.

4.    Accordingly, PHLX seeks declarations that (1) KBW has no right to indemnification for its losses, including defense costs, in the Second McGowan Action; and (2) KBW is not entitled to indemnification and reimbursement from PHLX for defense of the First McGowan Action (as defined below), for costs primarily incurred by KBW a year ago, for

which KBW has only recently suggested it is due indemnification, in violation of the Agreement's prompt notice requirement.

## II.    THE PARTIES

5.    Plaintiff Philadelphia Stock Exchange, Inc. is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania.

6.    Defendant Keefe, Bruyette & Woods, Inc. is a New York corporation with its principal place of business in New York.  Keefe, Bruyette & Woods, Inc. is a subsidiary of KBW, Inc., a Delaware corporation with its principal place of business in New York.

## III.    JURISDICTION AND VENUE

7.    Jurisdiction and venue are proper in this Court for this declaratory action because PHLX's contractual rights would be exercised in Philadelphia County and because the Exchange is located in Philadelphia County.  Personal jurisdiction exists over KBW, which, among other things, entered into the Agreement with PHLX and performed some of the Engagement in Philadelphia.

## IV.    BACKGROUND

### The Demutualization of PHLX

8.    PHLX, the first organized stock exchange in the United States, is a national securities exchange incorporated in Delaware.  PHLX is one of North America's primary marketplaces for the trading of equity options, index options, and foreign currency options.

9.    For a number of years, the Exchange was a membership corporation owned by several hundred "seat owners."  In November 2003, however, PHLX's seat owners and members voted to approve a plan of demutualization that would separate trading privileges from corporate ownership and create a stock corporation.  After the votes, and after the Securities and Exchange

Commission ("SEC") comprehensively reviewed and approved the plan following a public comment period, demutualization was effectuated on January 20, 2004.

## The KBW Engagement

10.    PHLX and KBW entered into the Agreement on February 6, 2003. A copy of the Agreement is attached hereto as Exhibit A.

11.    Under the Agreement, KBW provided PHLX with financial advisory and investment banking services in connection with the demutualization (previously defined as the "Engagement").

12.    PHLX, in turn, agreed to, inter alia, indemnify and hold harmless KBW in actions "related to or arising out of" the Engagement:

> In connection with KBW's engagement (which engagement may
> have commenced prior to the date hereof) hereunder, [PHLX]
> agrees to indemnify and hold harmless KBW and its affiliates, the
> respective directors, officers, agents and employees…from and
> against any losses, claims damages or liability (or actions,
> including shareholder actions, in respect thereof) related to or
> arising out of such engagement or KBW's role in connections
> therewith, and will reimburse KBW and any other party entitled to
> be indemnified hereunder for all expenses (including counsel fees)
> as they are incurred by KBW or any such other indemnified party
> in connection with investigating, preparing or defending any such
> action or claim whether or not in connection with pending or
> threatened litigation in which KBW is a party.

See Exhibit A at 5-6.

13.    The Agreement further provides that PHLX may assume the defense of KBW in Covered Actions:

> Upon notice of any actual or threatened claim as to which the
> foregoing indemnification or contribution provisions may apply,
> any person entitled to or potentially entitled to indemnification or
> contribution hereunder (as "indemnified party") shall give prompt
> written notice to [PHLX]; provided, however, that [PHLX] may,
> but shall not be under any obligation to, assume the defense of any
> such claim and, except as set forth in the following sentence in the

4

> event that it assumes such defense it shall be relieved of any
> further obligation to pay the cost of counsel to any indemnified
> party in respect of such claim.

See Exhibit A at 5-6.

14.    Finally, the Agreement provides that KBW may deny PHLX's request to assume

the defense of a Covered Action under limited circumstances:

> Notwithstanding the foregoing, [PHLX] shall not be entitled to
> assume the defense of any such claim if the [KBW] shall have
> been advised in writing by counsel that there may exist a conflict
> of interest in having counsel selected by [PHLX] assume such
> defense or if there shall exist separate and distinct defenses to the
> alleged causes of action unavailable or distinct from those of
> [PHLX].  If [PHLX] assumes the defense of such claim, [KBW]
> may participate in the proceedings at its own expense; if [PHLX]
> does not elect to assume the defense of such claim, [PHLX] may
> participate in the proceedings at its own expense.

See Exhibit A at 5-6.

### PHLX Demutualization Litigation

15.    The factual and legal allegations in the Second McGowan Action are amalgams of

those asserted in two previously filed and dismissed actions against PHLX and/or its Board and

involve overlapping plaintiffs and plaintiffs' counsel.

16.    The Second McGowan Action was filed against KBW on June 18, 2007, on

behalf of a purported class of shareholders of the PHLX.  The complaint alleges claims and seeks

damages for securities fraud under Section 10(b) and 29(b) of the Securities Exchange Act of

1934 and Section 1962(d) of the Racketeer Influenced and Corrupt Organizations Act arising

from KBW's role in PHLX's demutualization.

17.    The plaintiffs in the Second McGowan Action and their counsel had previously

brought suit in June 2006 against twenty-five current members of PHLX's board and/or

management, as well as PHLX's six strategic investors, on behalf of a putative class of PHLX

seat owners as of the time of PHLX's demutualization information memorandum. In that action, captioned <u>McGowan Investors LP, et al. v. Frucher, et al.</u>, No. 06-2558 (E.D. Pa.) (Brody, J.), No. 07-3980 (3d Cir.) (the "First McGowan Action"), to which plaintiffs marked the Second McGowan Action related, plaintiffs also alleged federal securities fraud and common law claims arising from PHLX's demutualization, the strategic transactions, and PHLX's subsequent self-tender offer. While defendants' motions to dismiss were pending in the First McGowan Action, plaintiffs filed an emergency motion that sought, inter alia, to join KBW as a defendant but did not include a proposed amended complaint. The court did not grant that request. Meanwhile, after extensive rounds of briefing of the defendants' motions to dismiss (the plaintiffs filed five supplemental briefs, only one of which the court had requested), on March 31, 2007, Judge Brody issued a 23-page opinion dismissing the plaintiffs' amended complaint with prejudice for failure to state a claim. The plaintiffs then filed a motion for reconsideration and for leave to amend their complaint, and included a proposed second amended complaint that included a federal securities fraud claim arising from demutualization against KBW. Judge Brody denied the motion and the plaintiffs filed a notice of appeal to the Third Circuit, where the appeal is pending.

18.    <u>Ginsburg v. Philadelphia Stock Exchange, Inc., et al.</u>, No. 2202-CC (Del. Ch.), was filed in Delaware Chancery Court a week before the First McGowan Action. On behalf of a class of PHLX shareholders, including the plaintiffs in the First McGowan Action, the plaintiff Chuck Ginsburg asserted state law claims against PHLX, its Board, and its Strategic Investors based on allegations that, *inter alia*, PHLX improperly pursued demutualization. The <u>Ginsburg</u> parties filed a Stipulation of Settlement in the Chancery Court on September 4, 2007. As part of the settlement, PHLX bargained for a release covering claims including those related to

demutualization, and for parties including PHLX's investment bankers, e.g. KBW. Upon receiving notice of the proposed settlement, a group of class members, including the plaintiffs in the First McGowan Action, filed objections to the settlement. The objectors contended, inter alia, that the release was overbroad in part because it could extinguish a number of other shareholder actions all of which involved overlapping plaintiffs and counsel suing PHLX board members and/or officers. On October 22, 2007, after a fairness hearing at which the objectors presented their arguments, the Chancery Court approved the settlement and held that the release properly covered claims arising from the issues litigated by the class. An appeal of the settlement approval and class certification to the Delaware Supreme Court is pending.

19.    In <u>PennMont Securities v. Frucher, et al.</u>, No. 05-6686 (E.D. Pa.) (Brody, J.), No. 08-1183 (3d Cir.), PennMont Securities, a PHLX shareholder, brought suit in December 2005 against five current and former members of PHLX's Board and/or management, alleging RICO and various common law claims arising from alleged mismanagement in connection with PHLX's demutualization as well as pre- and post-demutualization conduct. Judge Brody granted defendants' motion to dismiss on August 15, 2007 and, in a 41-page opinion, dismissed the action with prejudice for failure to state a claim. After the court denied the plaintiffs' motion for reconsideration, plaintiffs appealed to the Third Circuit and the appeal is pending.

### KBW's Rejection of PHLX's Offers of Assistance

20.    After informing KBW of the Second McGowan Action, PHLX sent a letter to KBW on July 10, 2007 exercising PHLX's right to assume the defense of KBW. PHLX offered to retain for KBW capable Philadelphia counsel, Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, a firm that is familiar with the Eastern District of Pennsylvania, and which could efficiently

cooperate with PHLX and its counsel so as to take advantage of their very substantial pre-existing knowledge of the legal and factual matters alleged.

21.    In a perfunctory and transparently unsupported letter of the very same date, KBW informed PHLX that it would not permit PHLX to assume the defense.  KBW cited -- without support -- its counsel's apparently immediate assertion  that a conflict of interest allegedly prevented PHLX from assuming its defense.

22.    With its pretextual assertion of a conflict of interest, KBW failed to permit PHLX to assume the defense of the Second McGowan Action.  It is clear that no conflict of interest exists.  PHLX has already defended three related lawsuits, and in each instance protected KBW's interests.  Because PHLX had undertaken an obligation to indemnify KBW in Covered Actions such as the Second McGowan Action, there is no scenario in which PHLX would benefit from a less than vigorous defense of KBW.  And, it was the clear intent of the parties to the Agreement that the special exception to PHLX's right to assume the defense was only for the circumstance where a true conflict arose when PHLX and KBW were co-defendants in the same suit.

23.    Since rejecting PHLX's offer to assume the defense of the Second McGowan Action, KBW has steadfastly refused to cooperate with PHLX or allow PHLX to participate in the defense of the lawsuit.

24.    As a result, KBW has demonstrated a lack of awareness of facts critical to a successful and efficient defense of the Second McGowan Action.  KBW thus has prejudiced PHLX's ability to ensure that claims for which PHLX may ultimately be liable are vigorously defended.

25.    Several examples of KBW's refusal to cooperate highlight the dangers to PHLX from KBW's non-cooperation:

DMEAST #9980113 v5

a.  KBW refused to disclose a draft of its motion to dismiss before filing it, as requested by PHLX so that PHLX could review and comment subject to the common interest privilege.

b.  While it was drafting its motion to dismiss, KBW was not aware of the PennMont lawsuit in which comparable allegations of fact and legal claims had already been dismissed after very extensive briefing.

c.  KBW was entirely unaware, when drafting the motion to dismiss, until PHLX informed it, of the release in the Ginsburg case which should have preclusive effect over the Second McGowan Action.

d.  KBW has stopped sending PHLX even filed papers in the matter, despite PHLX's requests to receive the same.

26.  Although PHLX insisted on making KBW aware of the related matters in an effort to assist KBW in its dismissal efforts, KBW failed to cooperate, to solicit relevant background information, and to keep PHLX informed.

27.  Due to its inefficient handling of the Second McGowan Action, KBW has already incurred unreasonable legal fees in excess of $220,000, just through the filing of a motion to dismiss.

28.  Deprived of the ability to meaningfully participate in the Second McGowan Action, PHLX has nevertheless been asked by KBW to provide indemnification and reimbursement.

29.  Although PHLX proceeded in this manner initially by Writ of Summons in an effort to resolve this matter amicably, KBW's reaction has been to play forum selection games, filing a countersuit with the same allegations on February 5, 2008 in the United States District

Court for the Southern District of New York.   In that lawsuit -- in which KBW is represented by the same counsel who provided the conflict opinion that has served as KBW's basis for retaining its own counsel -- KBW raised the threat of joining PHLX as a third party defendant to the Second McGowan Action.   That threat is a further breach of KBW's obligation to cooperate with PHLX and to permit PHLX to participate in the defense of the Second McGowan Action.

### COUNT I –DECLARATORY JUDGMENT

30.     Plaintiff incorporates as if fully set forth herein Paragraphs 1 through 29 of the Complaint.

31.     This count is brought pursuant to the Pennsylvania Declaratory Judgments Act, 42 Pa. C.S. § 7531, et seq.

32.     The Agreement was a valid and binding contract.

33.     PHLX satisfied its obligations under the Agreement.

34.     The Agreement provides that PHLX may assume the defense of the Second McGowan Action, and if PHLX chose not to do so, it may participate in the defense of the Second McGowan Action.   There is additionally, as a matter of law, a requirement of cooperation by KBW with PHLX as a prerequisite to indemnification.

35.     A dispute currently exists between the parties as to whether KBW is entitled to indemnification and reimbursement from PHLX for defense of the Second McGowan Action.

36.     Specifically, an active controversy exists between the parties as to whether KBW is entitled to indemnification and reimbursement from PHLX for losses relating to the Second McGowan Action, including costs of defense, by virtue of KBW's refusal to (1) permit PHLX to assume the defense; and (2) permit PHLX to participate in the defense.

DMEAST #9980113 v5

37.    KBW has, in breach of the Agreement, failed to provide PHLX with a meaningful opportunity to assume the defense of the Second McGowan Action.

38.    KBW has, in breach of the Agreement, failed to provide PHLX with a meaningful opportunity to participate in the defense of the Second McGowan Action.

39.    KBW has, in breach of the Agreement, failed to cooperate with PHLX in the defense of the Second McGowan Action.

40.    As a result of the foregoing, KBW has incurred excessive and unreasonable attorneys' fees in defense of the Second McGowan Action.

41.    Accordingly, PHLX is entitled to a declaration that defendant Keefe, Bruyette & Woods, Inc. is not entitled to indemnification and reimbursement under the Agreement or otherwise from PHLX for defense of the Second McGowan Action.

## COUNT II – DECLARATORY JUDGMENT

42.    Plaintiff incorporates as if fully set forth herein Paragraphs 1 through 41 of the Complaint.

43.    This count is brought pursuant to the Pennsylvania Declaratory Judgments Act, 42 Pa. C.S. § 7531, et seq.

44.    The Agreement was a valid and binding contract.

45.    PHLX satisfied its obligations under the Agreement.

46.    A dispute currently exists between the parties as to whether the Agreement entitles KBW to indemnification and reimbursement from PHLX for defense of the First McGowan Action.

47.    Specifically, an active controversy exists between the parties as to whether KBW properly demanded indemnification and reimbursement from PHLX for defense of the First

McGowan Action and whether the failure to make such demand negated KBW's right to seek indemnification and reimbursement from PHLX.

48.    Pursuant to the Agreement, KBW was required to provide "prompt notice" to PHLX of any actual or threatened claim for which it wished to seek indemnification.

49.    Pursuant to the Agreement, PHLX did not owe KBW a duty of indemnification and reimbursement for defense of the First McGowan Action unless and until KBW provided prompt notice to PHLX for same.

50.    KBW did not provide prompt notice of its request for indemnification to PHLX. Instead, KBW first made its request with the filing of its Complaint in the Southern District of New York approximately 8 months after the events giving rise to the supposedly indemnifiable KBW defense costs.

51.    Accordingly, PHLX is entitled to a declaration that defendant Keefe, Bruyette & Woods, Inc. is not entitled to indemnification and reimbursement under the Agreement or otherwise from PHLX for defense of the First McGowan Action.

WHEREFORE, plaintiff Philadelphia Stock Exchange, Inc. requests that judgment be entered in its favor and against defendant Keefe, Bruyette & Woods, Inc. as follows:

a. On Count I, a declaration that KBW is not entitled to indemnification by PHLX for losses, including costs of defense, settlement, and liabilities related to McGowan Investors LP, et al. v. Keefe, Bruyette & Woods, Inc., et al., No. 07-2464 (E.D. Pa) (Brody, J.); and

12

b.  On Count II, a declaration that KBW is not entitled to indemnification and reimbursement from PHLX for defense of <u>McGowan Investors LP, et al. v. Frucher, et al.</u>, No. 06-2558 (E.D. Pa.) (Brody, J.), No. 07-3980 (3d Cir.).

e.  Any and all other relief that this Court deems proper, including fees and costs.

Dated:  February 25, 2008

_____
Stephen J. Kastenberg,
Michael I. White
Jonathan T. Schmidt
Attorney ID Nos. 70919, 203674, 230604
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
*Counsel for Plaintiff*

DMEAST #9980113 v5

## VERIFICATION

I, Norman Steisel, hereby state that I am the Chief Operating Officer of the Philadelphia Stock Exchange, Inc; that I am authorized to make this verification on behalf of the plaintiffs in the foregoing Complaint; that I have personal knowledge of the statements made in the foregoing Complaint; and that the statements made in the Complaint, are true and correct to the best of my knowledge, information and belief.

I understand that the statements in this Verification are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

_____

Norman Steisel, Chief Operating Officer

# EXHIBIT A

# KEEFE, BRUYETTE & WOODS, INC.

SPECIALISTS IN BANKING AND FINANCIAL SERVICES

787 SEVENTH AVENUE    4TH FLOOR    NEW YORK, N.Y. 10019

TOLL FREE
1-800-966-1559

MAIN TELEPHONE
212-887-7777

February 6, 2003

Meyer S. Frucher
Chairman and Chief Executive Officer
The Philadelphia Stock Exchange
1900 Market Street
Philadelphia, PA 19020

Dear Mr. Frucher:

This letter confirms the engagement of Keefe, Bruyette & Woods, Inc. ("KBW") by The Philadelphia Stock Exchange, Inc. ("PHLX" or the "Company") on an exclusive basis to render general and specific financial advisory and investment banking services to the Company in connection with, but not limited to, the each of the following Strategic Events (collectively, "Strategic Events") :

(1)     The Company's planned demutualization ("Demutualization");

(2)     Possible strategic initiatives by the Company (or one or more of its subsidiaries, or any subsequently incorporated Holding Company, whereby the Company becomes a wholly owned subsidiary of such Holding Company), including corporate affiliations ("Affiliation") with one or more third parties;

(3)     Possible sale of a minority equity or equity-linked interest in the Company and/or a subsidiary or affiliate, and/or the issuance of debt securities by the Company (collectively, "Private Placement");

(4)     Possible commercialization (the "Commercialization") of the Company's wholly owned Financial Automation Group ("FA") business division through a Joint Venture or other strategic alliance (collectively, the "JV") with a third party investor (the "JV Partner"), that involves (i) a sale or transfer of some percentage of the Company's equity interest in FA, (ii) a sale of some or all the assets of FA, or (iii) an irrevocable transfer of some portion of the Company's interest in FA's technology and intellectual property assets.

For the services described above, the Company agrees to pay KBW a cash fee of $200,000 ("Retainer Fee"), including $100,000 payable at the time of signing of this letter engagement; $50,000 payable on or before June 30, 2003, and; $50,000 payable on or before December 31, 2003. Any Retainer Fee, or portion thereof, paid by the Company to KBW under the terms of this agreement will be credited against the Demutualization Opinion Fee as defined below.

KEEFE, BRUYETTE & WOODS, INC.

Additionally, if so requested by the Company, KBW will render an opinion and/or related analyses to the Board or Special Committee so formed by the Board ("Special Committee") to evaluate the fairness, from a financial point of view, to the seat owners and/or members of the Company, of the consideration offered in a certain proposed Demutualization ("Demutualization Opinion"). The Demutualization Opinion may be in such form as KBW shall determine and KBW may qualify this opinion in such manner as KBW believes reasonably appropriate, including by stating therein that KBW has relied upon the information furnished to it by the Company, has assumed the accuracy and completeness of such information and has not attempted independently to verify any of such information.

For the services described above in relation to the Demutualization Opinion, the Company agrees to compensate KBW a cash fee of $450,000 ("Demutualization Opinion Fee") upon the presentation by KBW of the Demutualization Opinion and or other valuation analyses to the Board or Special Committee.

In the event management elects to pursue an Affiliation of the Company, with another corporation or other business entity (a "Merger Partner") in the form of a merger of the Company with, or a transfer of all or a substantial portion of its assets or its member interests to, a Merger Partner (a "Merger "), KBW, as the Company's exclusive financial advisor, will advise and assist the Company in considering the desirability of the Merger, and in arriving at definitive financial terms thereof. In connection with the foregoing, KBW will familiarize itself to the extent appropriate and feasible with the business, operations, financial condition and prospects of the Company and the Merger Partner and will advise and assist the Company in developing a general strategy for accomplishing the Merger, including the structure of the Merger and the possible price or price range that might reasonably be obtained by the Company and/or its seat owners and/or members in the Merger. In addition, KBW will develop a list of potential Merger Partners in accordance with selection criteria to be developed by the Company with the advice of KBW. KBW will then attempt to approach those Merger Partners that are approved by the Company to determine their receptiveness to a Merger. Based on an expression of interest in further discussions by a Merger Partner, KBW will develop and assess various alternatives for consummating a Merger and will assist the Company in negotiations leading to the completion of a Merger.

Additionally, if so requested by the Company, KBW will render an opinion (the "Merger Opinion") to the Board of Governors as to the fairness, from a financial point of view, to seat owners and/or members of the Company, of the consideration offered in the Merger. The Merger Opinion may be in such form as KBW shall determine and KBW may qualify the Merger Opinion in such manner as KBW believes reasonably appropriate, including by stating therein that KBW has relied upon the information furnished to it by the Company, has assumed the accuracy and completeness of such information and has not attempted independently to verify any of such information.

For the services described above in relation to a Merger consummated with any Merger Partner, the Company agrees to compensate KBW a cash fee in the amount of two percent (2.0%) of the aggregate Merger value, to a maximum of two million dollars ($2,000,000), payable promptly to KBW at the time of closing of said Merger ("Merger Success Fee").

In the event management elects to pursue a Private Placement, KBW, as the Company's exclusive financial advisor, will advise and assist the Company in considering the desirability of the Private Placement, and in arriving at definitive financial terms thereof. In connection with the foregoing, KBW will familiarize itself to the extent appropriate and feasible with the business, operations, financial condition and prospects of the Company, In addition, KBW will develop a list of potential Private Placement Investors ("Investors") in accordance with selection criteria to be developed by the Company with the advice of KBW. KBW will then attempt to approach said Investors, after receiving approval by the Company, to determine their receptiveness to a Private Placement. Based on an expression of interest

-2-

KEEFE, BRUYETTE & WOODS, INC.

and subsequent discussions and negotiations with Investors, KBW will assist the Company in negotiations leading to the completion of a Private Placement.

For the services described above in relation to a Private Placement, the Company agrees to compensate KBW a cash fee ("Private Placement Success Fee") at the time of the closing of the Private Placement. The total amount of said cash fee will not exceed two million dollars ($2,000,000), with the exact amount of said cash fee dependent upon the aggregate capital raised by KBW through the Private Placement The schedule contained herein ("Private Placement Fee Schedule") will be used to determine the cash fee payable at closing to KBW:

Private Placement Fee Schedule

> Minimum cash fee of $500,000; or,
> 5.0% of aggregate capital raised for the first $20,000,000; plus,
> 4.0% of aggregate capital raised from $20,000,001 - $30,000,000; plus,
> 3.0% of aggregate capital raised from $30,000,001 - $40,000,000.

In the event management elects to pursue a Commercialization, KBW, as the Company's exclusive financial advisor, will advise and assist the Company in considering the desirability of the Commercialization, and in arriving at definitive financial terms therefor. In connection with the foregoing, KBW will familiarize itself to the extent appropriate and feasible with the business, operations, financial condition and prospects of the Company, of FA Group and of the JV Partner to the extent JV Partner furnishes information necessary for KBW to reasonably fulfill such responsibilities. KBW will also advise and assist the Company in developing a general strategy for accomplishing the Commercialization, including the structure of the Commercialization and the possible pro-forma percentage ownership of the JV that might reasonably be obtained by the Company after giving effect to the formation of a new business entity ("Newco") and the consummation of said Commercialization. In addition, KBW will develop a list of potential JV Partners in accordance with selection criteria to be developed by the Company with the advice of KBW. KBW will then attempt to approach said JV Partners, after receiving approval by the Company, to determine their receptiveness to a joint venture and Commercialization. Based on an expression of interest and subsequent discussions and negotiations with a JV Partner, KBW will develop and assess various alternatives for consummating a Commercialization and will assist the Company in negotiations leading to the completion of a Commercialization.

For the services described above in relation to a Commercialization, the Company agrees to compensate KBW a cash fee ("Commercialization Success Fee") at the time of the closing of the Commercialization. The total amount of said cash fee will not exceed two million dollars ($2,000,000), with the exact amount of said cash fee dependent upon the aggregate capital raised by KBW. The schedule contained herein ("Commercialization Fee Schedule") will be used to determine the cash fee payable at closing to KBW:

Commercialization Fee Schedule

> Minimum cash fee of $500,000; or,
> 5.0% of aggregate capital raised for the first $20,000,000; plus,
> 4.0% of aggregate capital raised from $20,000,001 - $30,000,000; plus,
> 3.0% of aggregate capital raised from $30,000,001 - $40,000,000.

KEEFE, BRUYETTE & WOODS, INC.

In addition to any fees payable to KBW pursuant to the foregoing Strategic Events, and regardless of whether any Strategic Event is proposed or consummated, the Company agrees, from time to time upon request, to reimburse KBW for all reasonable out-of-pocket expenses and disbursements, including fees and reasonable expenses of counsel, incurred in connection with this retention up to but not to exceed fifty thousand dollars ($50,000) per annum.

The Company agrees to furnish KBW with such information as KBW believes appropriate to its assignment (all such information so furnished being the "Information"). The Company recognizes and confirms that KBW (i) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this letter agreement without having independently verified the same and (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information.

KBW acknowledges that a portion of the Information may contain confidential and proprietary business information concerning the Company and/or prospective Affiliation, Private Placement Investors or JV partners, and/or other third parties mutually deemed by the Company and KBW to be associated with one or more Strategic Event. KBW agrees to maintain the confidentiality of such Information; provided, that such Information may be disclosed to KBW's employees, agents and representatives who need to know such Information for the purpose of assisting KBW in rendering the services contemplated hereunder (it being understood that such persons shall be informed of the confidential nature of the Information and shall be directed to treat such Information confidentially). The confidentiality agreement hereunder shall not apply to Information which: (i) becomes generally available to the public other than as a result of a disclosure by KBW or its representatives; (ii) was available on a non-confidential basis prior to its disclosure to KBW; or (iii) becomes available to KBW on a non-confidential basis from a source other than the Company or its representatives provided that such source is not bound by a confidentiality agreement with the Company or its representatives.

The Company acknowledges that all opinions and advice (written or oral) given by KBW to the Company in connection with KBW's engagement are intended solely for the benefit and use of the senior management, the Board of Governors or Special Committee for the purposes of their evaluation of the proposed Strategic Event. Unless otherwise expressly stated by KBW, no one other than such persons is authorized to rely upon this engagement of KBW or any statements or conduct by KBW. The Company agrees that no such opinion or advice shall be used, reproduced, disseminated, quoted or referred to at any time, in any manner, or for any purpose, nor shall any public references to KBW be made by the Company or any of its representatives without the prior written consent of KBW.

The Company acknowledges and agrees that KBW has been retained to act solely as financial advisor to the Company. In such capacity, KBW shall act as an independent contractor, and any duties arising out of its engagement shall be owed solely to the Company.

The Company acknowledges that KBW may, from time to time, retain a third-party independent consultant or consultants to assist it in the fulfillment of various responsibilities in accordance with this letter engagement. KBW agrees to receive the express approval of the Company prior to retaining any third-party consultant or consultants.

In connection with KBW's engagement (which engagement may have commenced prior to the date hereof) hereunder, the Company agrees to indemnify and hold harmless KBW and its affiliates, the respective directors, officers, agents and employees of KBW and its affiliates and each other person, if any, controlling KBW or any of its affiliates and each of their respective successors and assigns, to the fullest extent permitted by law, from and against any losses, claims, damages or liabilities (or actions, including shareholder actions, in respect thereof) related to or arising out of such engagement or KBW's

-4-

KEEFE, BRUYETTE & WOODS, INC.

role in connection therewith, and will reimburse KBW and any other party entitled to be indemnified hereunder for all expenses (including counsel fees) as they are incurred by KBW or any such other indemnified party in connection with investigating, preparing or defending any such action or claim whether or not in connection with pending or threatened litigation in which KBW is a party. The Company will not, however, be responsible for any claims, liabilities, losses, damages or expenses that are finally judicially determined to have resulted primarily from KBW's bad faith or gross negligence.

If the indemnification provided for in the foregoing paragraph is judicially determined to be unavailable (other than in accordance with the terms hereof) to any person otherwise entitled to indemnity in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such person hereunder, the Company shall contribute to the amount paid or payable by such person as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and KBW, on the other hand, of the engagement provided for in this Agreement or (ii) if the allocation provided for in clause (i) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (i) but also the relative fault of each of the Company and KBW, as well as any other relevant equitable considerations; provided, however, in no event shall KBW's aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by KBW under this Agreement. For the purposes of this Agreement, the relative benefits to the Company and to KBW of the engagement under this Agreement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by the Company or the Company's stockholders, as the case may be, in the Affiliation, Transaction or Commercialization that are the subject of the engagement hereunder, whether or not any such Affiliation, Transaction or Commercialization is consummated, bears to (b) the fees paid or to be paid to KBW under this Agreement.

The Company also agrees that neither KBW, nor any of its affiliates nor any officer, director, employee or agent of KBW or any of its affiliates, nor any person controlling KBW or any of its affiliates, shall have any liability to the Company for or in connection with such engagement except for any such liability for losses, claims, damages, liabilities or expenses incurred by the Company which are finally judicially determined to have resulted primarily from KBW's bad faith or gross negligence. The foregoing agreement shall be in addition to any rights that KBW, the Company or any indemnified party may have at common law or otherwise, including, but not limited to, any right to contribution. KBW agrees that it will not settle, compromise or consent to the entry of any judgment with respect to any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder, where the Company is a party to such claim, action, suit or proceeding, without the prior written consent of the Company, which consent will not be unreasonably withheld.

The Company agrees that it will not, without the prior written consent of KBW, settle or compromise or consent to the entry of any judgment with respect to any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not KBW is an actual or potential party to such claim, action, suit, or proceeding) unless such settlement, compromise or consent includes an unconditional release of KBW from all liability arising out of such claim, action, suit or proceeding.

Upon notice of any actual or threatened claim as to which the foregoing indemnification or contribution provisions may apply, any person entitled or potentially entitled to indemnification or contribution hereunder (an "indemnified party") shall give prompt written notice to the Company; provided, however, that the Company may, but shall not be under any obligation to, assume the defense of any such claim and, except as set forth in the following sentence in the event that it assumes such defense it shall be relieved of any further obligation to pay the cost of counsel to any indemnified party in respect of such claim. Notwithstanding the foregoing, the Company shall not be entitled to assume the

KEEFE, BRUYETTE & WOODS, INC.

defense of any such claim if the indemnified party shall have been advised in writing by counsel that there may exist a conflict of interest in having counsel selected by the Company assume such defense or if there shall exist separate and distinct defenses to the alleged causes of action unavailable or distinct from those of the Company. If the Company assumes the defense of such claim, the indemnified party may participate in the proceedings at its own expense; if it does not elect to assume the defense of such claim, then the Company may participate in the proceedings at its own expense.

It is understood that KBW's engagement referred to above may be embodied in one or more separate written agreements that refer specifically to this engagement letter and that, in connection with such engagement, KBW may also be requested to provide additional services or to act for the Company in one or more additional capacities. The indemnification provided hereunder shall apply to said engagement, any such additional services or activities and any modification, and shall remain in full force and effect following the completion or termination of KBW's engagement.

This letter agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state, without regard to such state's rules concerning conflicts of laws. Any right to trial by jury with respect to any claim or action arising out of this agreement or conduct in connection with the engagement is hereby waived by the parties hereto.

KBW and the Company agree that this engagement shall not extend to any financial advisory or investment banking services provided by KBW beyond that described in this engagement letter. In the event that the Company determines to retain KBW in connection with any additional services ("Additional Services"), and KBW agrees to provide such Additional Services, the nature of such Additional Services together with compensation arrangements between the Company and KBW shall be negotiated pursuant to a separate engagement proposal prior to the time such Additional Services are rendered.

KBW's engagement hereunder may be terminated by either the Company or KBW at any time after December 31, 2003 with or without cause, upon written advice to that effect to the other party; provided, however, that KBW will be entitled to any and all Merger Success Fees, Private Placement Success Fees, and/or Commercialization Success Fees, in the event that at any time prior to the expiration of eighteen (18) months after the termination of KBW's engagement a Strategic Event is consummated between the Company and a party identified in writing by KBW in Appendix A - Prospective Strategic Event Partners Identified by KBW, to be delivered to the Company within thirty (30) business days after the termination of this letter engagement; and provided further, that the expenses and indemnity and contribution provisions hereof shall survive such termination.

Both KBW and the Company agree that the signing of this letter agreement will render null and void any and all previous letter engagement/s between KBW and the Company, except to the extent of any outstanding fees owed to KBW by the Company and except to the extent of any provisions which KBW and the Company have agreed in writing will survive such previous letter engagements.

KEEFE, BRUYETTE & WOODS, INC.

Please confirm that the foregoing is in accordance with your understanding and agreement with KBW by signing and returning to KBW the duplicate of this letter enclosed herewith.

Sincerely,

Keefe, Bruyette & Woods, Inc.

By: _____
Name: Joseph J. Spalluto, Esq.
Title:  Managing Director
Investment Banking Group

The undersigned hereby agrees to the above terms as of this 6th day of February 2003.

The Philadelphia Stock Exchange, Inc.

By: _____
Name:  Meyer S. Frucher
Title:  Chairman and Chief Executive Officer

-7-

## CERTIFICATE OF SERVICE

I, Jonathan T. Schmidt., hereby certify that on this day, I caused an original and

two copies of the foregoing **Notice to Defend** and **Complaint-Civil Action** to be served, via

first-class mail, postage prepaid, on the defendant:

Keefe, Bruyette & Woods Inc.
The Equitable Building
787 Seventh Avenue, 4th Floor
New York, NY 10019

I further certify that I caused an original and two copies of the foregoing **Notice**

**to Defend** and **Complaint-Civil Action** to be served, via first-class mail, postage prepaid, on the

counsel for the defendant's parent company, which was an original defendant in this action:

Sean P. Mahoney, Esquire
Gibbons, P.C.
1700 Two Logan Square
17th & Arch Streets
Philadelphia, PA 19103-2769
**(Counsel for KBW, Inc.)**

Dated: February 25, 2008

Jonathan T. Schmidt